IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN E. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 7317 |
| | ) | Judge Elaine E. Bucklo |
| CITY OF CHICAGO, a Municipal | ) | |
| Corporation; and JOHN J. ESCALANTE, | ) | |
| Interim Superintendent of the Chicago | ) | JURY DEMANDED |
| Police Department; GARRY MC CARTHY, | ) | |
| Former Superintendent of the Chicago | ) | |
| Police Department; CHICAGO POLICE | ) | |
| CAPTAIN ROBERT KLICH, Commander First | ) | |
| Central District of the Chicago Police Department, | ) | |
| CHICAGO POLICE LIEUTENANT JOHN A. | ) | |
| MACIEJEWSKI, JR. STAR NO. 321; | ) | |
| CHICAGO POLICE SERGEANT JOHN | ) | |
| MOSQUERA, STAR No.1959; CHICAGO | ) | |
| POLICE SERGEANT STEVEN J. BECHINA, | ) | |
| STAR NO. 1795; CHICAGO POLICE | ) | |
| OFFICER RICHARD P. WOLFE, | ) | |
| STAR NO. 18973; CHICAGO POLICE | ) | |
| OFFICER MARK FEENEY, STAR NO. 29802; | ) | |
| CHICAGO POLICE OFFICER JOHN DOE; | ) | |
| | ) | |
| Defendants. | ) | |

AMENDED COMPLAINT

NOW COMES the Plaintiff, MARTIN EDWARD LEWIS, by and through one of his

attorneys, Elizabeth J. Guscott-Mueller, and complains of Defendants, CITY OF CHICAGO,

ILLINOIS, an Illinois municipal corporation, Chicago police officers; and unidentified

employees of the City of Chicago (collectively, "Defendant Officers"), states as follows:

1

NATURE OF THE ACTION

1. The Plaintiff, an African American, was arrested for an ordinance violation, which if convicted of the offense, would have resulted in a fine and not a jail sentence. Ultimately, however, the charge against Plaintiff was dismissed and Plaintiff's record was expunged.

2. Nevertheless, in the course of his arrest, during which he was not issued Miranda warnings, Plaintiff was detained for more than ten hours and not provided an opportunity to make a phone call.

3. Plaintiff brings this action challenging a policy and or practice of the City of Chicago, pursuant to 42 U.S.C. Sections 1983 and 1988 of detaining plaintiffs for an excessive period of time after all administrative steps incident to the arrest were or should have been completed. These practices and/or policies were or have been approved, condoned and employed by Defendants Mc Carthy, Escalante, the district Commanders, and supervisory personnel named as defendants herein. The actions taken by Defendants as alleged herein were made under color of State law.

4. Widely available public reports, FOIA request responses, available data bases and analyses of Chicago Police department arrest and misconduct oversight records reveal the pattern and practice of detaining arrestees, the majority of which are African-American, for prolonged and unexplained periods of time after the completion of the processing of the arrests.

5. Plaintiff seeks damages and injunctive relief to redress deprivations under color of law, of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

**JURISDICTION AND VENUE**

6. The court has jurisdiction of this cause pursuant to pursuant to 42 U.S.C. 1983 and

1988.

7. Venue is proper in the Northern District of Illinois under 28 U.S.C. 1391 (b) because all defendants reside in Illinois and in the District. Moreover, all events giving rise to the claims occurred in the District.

## THE PARTIES

8. The plaintiff, Martin Edward Lewis, is an African American citizen of the United States and at all times relevant hereto has been a resident of the State of Illinois.

9. Defendant City of Chicago is a municipal corporation, a body politic, existing under and by virtue of the laws of the State of Illinois.

*10.* Defendant Garry McCarthy is the former superintendent of the Chicago Police Department and was employed by the City of Chicago as the Superintendent of the Chicago Police Department at the time plaintiff was arrested and detained for a prolonged and excessive period of time. Upon information and belief, he resides in the City of Chicago, State of Illinois. He is sued in his official and individual capacities.

11. Defendant John Escalante is employed as the current Superintendent of the Chicago Police Department. He resides in the City of Chicago, State of Illinois. He is sued in his official and individual capacities.

12. Defendant Captain Robert Klich is employed as the Commander of the first central police district in the City of Chicago. He resides in Chicago, Illinois. He is sued in his official and individual capacities.

13. At all times relevant hereto, Defendant Lieutenant John A. Maciejewski, Jr., Star

3

No. 321 was employed by the Chicago Police Department, as a station supervisor, in the first central police district in the City of Chicago. He resides in Chicago, Illinois. He is sued in his official and individual capacities.

14. At all times relevant hereto, Sergeant John R. Mosquera, Star No. 1959, was employed by the Chicago Police Department, as an acting watch commander, in the first central police district in the City of Chicago. He resides in Chicago, Illinois. He is sued in his official and individual capacities.

15. At all times relevant hereto, Sergeant Steven J. Bechina, Star No. 1795, was employed by the Chicago Police Department, as an acting watch commander, in the first central police district in the City of Chicago. He resides in Chicago, Illinois. He is sued in his official and individual capacities.

16. At all relevant times hereto, Defendant Richard P. Wolfe, Star No. 18973, was employed as a police officer in the first central police district in the City of Chicago. He resides in Chicago, Illinois. He is sued in his official and individual capacities.

17. At all relevant times hereto, Defendant Mark Feeney Star No. 10317, was employed as a police officer in the first central police district in the City of Chicago. He resides in Chicago, Illinois. He is sued in his official and individual capacities.

18. Defendant Chicago Police Officers John Does are all sworn officers of the Police whose names and star numbers are not now known to plaintiffs. At all relevant times hereto, unknown and, therefore, unnamed police officers, John Doe officers were employed in the first central police district in the City of Chicago. Said information as to their respective identities lies within the control of the City of Chicago Police Department. Upon

4

information and belief, these defendants reside in Chicago, Illinois. They are sued in their respective official and individual capacities.

## FACTUAL ALLEGATIONS

19. On February 7, 2013, at approximately 11:30 p.m., plaintiff Martin Edward Lewis was arrested at 138 W. Cermak Road at the Red Line Cermak-Chinatown Archer Annex in Chicago, Illinois, by Officers Richard Wolfe and Mark Feeney for alleged trespass on CTA property without paying, under City of Chicago Ordinance 98-126-1.14(c), a ticketable offense. Under the Municipal Code of Chicago, 10-8-526, an individual convicted of trespass to CTA property without paying may be fined no more than $500.00 for each offense. Conviction under this ordinance does not carry any jail time.

20. Notwithstanding that the alleged violation was a ticketable offense, the arresting officers transported Mr. Edwards to the police station then located at 1718 S. State Street in Chicago, Illinois.

21. Throughout the course of his arrest and detention, plaintiff fully cooperated with the instructions and requests of the arresting and detaining police officers. Notwithstanding his cooperation, he was handcuffed for a portion of the detention.

22. At the station, Defendants Wolfe and Feeney proceeded to ask him a series of questions, during which plaintiff showed the officers his CTA passes, and he was processed, after which he was handcuffed and later placed in a holding cell.

5

23. Throughout the course of his arrest and detention, Lewis was not given <u>Miranda</u> warnings, nor was he allowed access to legal representation. Lewis was not allowed a telephone call or to communicate with others. During the course of his arrest, questioning and detention, Plaintiff was advised that if he communicated with others present in the police station, he would be charged under the state statute for trespass, rather than the municipal ordinance.

24. Plaintiff had no outstanding warrants. Nevertheless, Plaintiff was held in a cell until 10:00 a.m. the following morning, resulting in an excessive and unexplained detention of more than 10 hours. This detention was far longer than was reasonable and necessary to process and release plaintiff and was conducted pursuant to the normal practice of the defendants of unlawfully detaining people arrested for non-violent offenses, under ordinances which impose a fine only, if convicted.

25. During his arrest and detention, Plaintiff was not given any food or water and spent the entire night in the holding cell, unable to sleep. He spent the night alone in his cell.

26. Plaintiff was entitled to be released on a personal recognizance bond pursuant to 553(d) of the Illinois Supreme Court after the administrative steps were completed.

27. Commander John Doe, at all times relevant to this Complaint, was the commander of the first central District. As the Commander, Defendant John Doe had actual or constructive knowledge of the widespread and systemic delays in releasing individuals on I-Bonds for ordinance offenses. Defendant John Doe either facilitated, employed, approved or condoned the systematic delay which resulted in the Plaintiff's extended detention.

# CITY OF CHICAGO

# PROCEDURES AND PRACTICES

28. At all times relevant to this complaint, the City of Chicago, through the Mayor, elected aldermen and the named supervisors and officers within the Chicago Police Department, have a policy and practice through their community policing programs of vigorously arresting and detaining people for minor ticketable ordinances offences which impose only a fine. The arrest and extended detentions most frequently in the central business district, on C.T.A. facilities and the shopping areas.

29. That the City, through the Mayor, elected aldermen, CPD and named supervisors and officers are aware that people arrested for these minor violations are rarely prosecuted and/or found guilty in, the fines are seldom paid because the people are indigent.

30. There is a widespread and systemic practice in the City of Chicago of detaining individuals arrested on minor ordinance offenses, for an extended period of time after all administrative steps have been completed.

31. Starting in August 2015, The Guardian newspaper published a series of articles (The Guardian Articles) regarding the policy and practices at the Chicago Police Department over an eleven year period (from 2004-2015) and conducted a statistical analysis of arrests and detentions at the Homan Square CPD facility [www.the guardian.com/us-news/homan-square]. The data that was subject to The Guardian's analysis was obtained from the CPD through the Freedom of Information Act (FOIA) after protracted litigation. The Guardian Articles reported a remarkably similar pattern of CPD policies, practices and procedures as occurred to Mr. Lewis, including, but not limited to:

7

a.) Arrests and detentions of African Americans at a much higher percentage than reside generally in the City of Chicago as evidenced by the 2010 U.S. Census tracks;

b.) Arrests and detentions for minor infractions;

c.) Excessive detention of arrestees;

d.) Detainees held in communicado; and

e.) Detainees not provided access to attorneys.

32. The remarkable similarities between the conduct of the CPD in the arrest and detention of Mr. Lewis and the conduct of the CPD as reported in The Guardian Articles over an eleven year period demonstrate that the conduct is not isolated or aberrational but constitute systematic policies, practices, custom and procedures that violated and threaten to violate PlaintiffLewis' legal and Constitutional rights.

33. That the practice of detaining for an unreasonable and excessive period of time, individuals arrested for minor offenses is so persistent and widespread that the policymakers for the City were either ware of the practice or should have known of the behavior. Furthermore, the City of Chicago approved, acquiesced or encouraged the practice of detaining these individuals for an excessive period of time after all administrative steps incident to the arrest were completed.

34. The policy described herein constitutes an express policy or a widespread practice that although not authorized by written law or regulation, is so permanent and well settled as to constitute a custom or usage with the force of law and to amount to an official policy of the City of Chicago. Alternatively, the policy and practice is one made by or condoned by the named

Defendants who as supervisors for the Chicago Police Department have final decision making authority for the policy.

35. That the practice of detaining for an unreasonable and excessive period of time, individuals arrested for minor offenses is so persistent and widespread that the Mayor, city council members and other policymakers for the City were either aware of the practice or should have known of the behavior. Furthermore, the City of Chicago approved, acquiesced or encouraged the practice of detaining these individuals for an excessive period of time after all administrative steps incident to the arrest were completed.

36. The policy described herein constitutes an express policy or a widespread practice that although not authorized by written law or regulation, is so permanent and well settled as to constitute a custom or usage with the force of law and amount to an official policy of the City of Chicago. Alternatively, the policy and practice is one made by or condoned by Defendants McCarthy and Escalante and the defendant district commanders who as supervisors for the Chicago Police Department have final decision making authority for the policy.

## SUPERVISORS WITHIN CHICAGO POLICE DEPARTMENT

37. Defendants Robert Klich, John A. Macoekewski, Jr., John Mosquera, and Steven Bechina, and John Doe are all supervisors for the Chicago Police Department and at all times relevant to this complaint have acted as either station supervisors, commanders, or watch commanders.

38. Defendants, as watch commanders have the responsibility and duty to make sure that the administrative steps incident to an arrest are completed. Pursuant to General and Special Orders of the Police Department, a watch commander or station supervisor has, among others,

the following responsibilities concerning processing a person in custody for an ordinance charge:

    a. Review all arrest reports prepared by the arresting officers and make a probable cause finding.

    b. Personally inspect the lockup at least four times during a tour of duty;

    c. After the booking process is complete, approve the charges and release the person on an I-Bond providing the person has no outstanding warrants and cannot post a cash bond.

    39. As a result of their responsibilities, the defendants have personal knowledge of the practice of detaining individuals for a prolonged period of time after the booking process is complete and approve of the practice and participate in the excessive detentions by delaying the approval of the releases on I-Bonds.

    40. The aforementioned supervisory Defendants either know of the practice by virtue of the fact that they inspect the lockups and review the arrest reports prior to releasing the individuals on I-Bonds or are deliberately and recklessly indifferent to the practice by turning a blind eye to the excessive detentions.

    41. Defendants Garry McCarthy, John Escalante, Robert Klich, John A. Macoekewski, Jr., John Mosquera, and Steven Bechina have the authority and responsibility to provide oversight and to ascertain whether the department is in compliance with General and Special Order regarding detentions.. They either knew or should have known of the widespread and systematic practice alleged herein or has turned a blind eye to the practice with deliberate and reckless indifferences to the rights of the plaintiff.

## COUNT I

## CITY OF CHICAGO

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43. The defendant City of Chicago and named defendant supervisors within the Chicago Police Department have the duty to establish procedures and policies and to train their police officers to complete the administrative steps incident to the arrest of a person for non-violent offenses, under the ordinances which impose only a fine and not jail time upon conviction, in a reasonable prompt manner.

44. That the City of Chicago and the supervisors named as defendants have failed to establish appropriate procedures and practices to insure that individuals arrested for ordinance violations which carry no jail time are timely processed and released on I-Bonds within a reasonable time after the processing of their arrest is complete.

45. That the City of Chicago and the supervisors named as defendants have failed to properly train and supervise their employees to insure that individuals arrested for ordinance violations which carry no jail time are timely processed and released on I-Bonds within a reasonable time after the processing of their arrest is complete.

46. The detention of the plaintiff for over 10 hours is unreasonable, and constitutes deliberate indifference to the rights of the plaintiff, in violation of the Fourth Amendment and Fourteenth Amendments to the U.S. Constitution.

47. That defendants' failure to adopt proper procedures and policies for releasing on I-Bonds individuals arrested on minor ordinance violations constitute an utter indifference to or conscious disregard for the rights of the citizens that they not be subject to unreasonable, excessive detention, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.

48. That, as a direct and proximate result of the practices, policies and procedures of the defendants, the plaintiff was detained for an excessive period of time after all administrative steps incident to his arrest were completed, thus suffering a loss of liberty, lost time from normal endeavors, and great emotional distress.

49. The extended detention of the plaintiff after his arrest on a non-violent, ordinance violation which carries no jail time constitutes deliberate indifference to the rights of the plaintiff, in violation of the Fourth and Fourteenth Amendments to the Constitution.

50. That defendants' failure to adopt proper procedures and policies for timely processing and releasing on I-Bonds individuals arrested on minor ordinance violations constitutes an utter indifference to or conscious disregard for the rights of citizens that they may not be subject to unreasonable, excessive detention, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.

51. As a direct and proximate result of the City of Chicago's policies, practice and procedures of detaining the plaintiff and failing to promptly process and release him, the plaintiff was incarcerated in a jail cell for many hours, lost time from his normal endeavors and has suffered great emotion pain, due to this unconstitutional loss of liberty.

Wherefore, the plaintiff requests that this Honorable Court:

(a) Enter judgment on behalf of plaintiff against defendant for monetary damages to be determined at trial;

(b) Enter judgment for reasonable attorneys' fees and costs incurred in bringing this action and;

(c) Grant plaintiff any and all other relief as law and justice demand.

## COUNT II

## DEFENDANTS MCCARTHY, ESCALANTE, KLICH, MACIEJEWSKI, MOSQUERA, BECHINA, FEENEY, WOLFE AND DOE

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50, as if fully set forth below.

52. That defendants' failure to promptly process and release the plaintiff and/or adopt proper procedures and policies for promptly processing and releasing individuals arrested on minor ordinance violations constitutes an utter indifference to or conscious disregard for the rights of citizens that they not be the subject to unreasonable, excessive detention, in violation of the Fourth and/or Fourteenth Amendment to the United States Constitution.

53. As a direct and proximate result of the defendants' failure to promptly process and release the plaintiff and due to the policies, practice and procedures of detaining the plaintiff after the administrative steps incident to his arrest were or should have been complete, the plaintiff was arrested, detained and incarcerated in a jail cell for a period of over 10 hours, has lost time from his normal endeavors, and has suffered great emotional pain, due to this unconstitutional loss of liberty.

Wherefore, the plaintiff requests that this Honorable Court:

13

(a) Enter judgment on behalf of plaintiff and against defendants for monetary damages to be determined at trial;

(b) Enter judgment for punitive damages jointly and severally against defendants to be determined at trial;

(c) Enter judgment for reasonable attorneys' fees and costs incurred in bringing this action; and

(d) Grant plaintiff any and all relief as law and justice demand.

Plaintiff demands trial by jury.

DATED: February 22, 2016

Respectfully submitted,

MARTIN EDWARD LEWIS

By: /s/Elizabeth J. Guscott-Mueller
    One of His Attorneys

Elizabeth J. Guscott-Mueller
Guscott-Mueller Law, LLC
Four Market Square Court
Lake Forest, Illinois 60045
Telephone: 847.735.9521
Facsimile: 847.234.6924
ARDC: 6189391

15